**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(BALTIMORE)**

| | | |
|---|---|---|
| **JOHN FISHBACK** | * | |
| **Plaintiff** | * | |
| **v.** | * | |
| **STATE OF MARYLAND,** *et al.* | * | **Case No.:  1:22-cv-00833-LKG** |
| **Defendants** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR HEARING

Plaintiff John Fishback respectfully requests that this Court deny the Defendants' Motion to Dismiss (ECF 18, the "Motion"), and states in support:

### INTRODUCTION AND RELEVANT FACTS

Plaintiff supplements the facts outlined on pages 1–2 of the Motion, as follows.

### *2017 Action*

On November 2, 2017, fearing that his life was in imminent danger, Plaintiff filed an action for injunctive relief in this Court styled as *John Fishback v. Richard Graham, Jr., et al.*, No. 1:17-cv-03234-JKB.  Plaintiff alleged that he told several WCI correctional officers that gang members were accusing him of stealing and threatening his life.  *Id.*, ECF 2 at 10–12 (Nov. 2, 2017); *see also* Am. Compl., Ex. 4 (ECF 5-4) at 8.  This Court denied Plaintiff's request for an injunction by Memorandum Opinion dated March 22, 2018 and relied on affidavits from WCI and DPSCS officials stating that Plaintiff would be housed in administrative segregation and away from the gang members who were threatening him.  *Fishback v. Graham*, No. 1:17-cv-03234-JKB, ECF 20 at 2.

***Subject Attack***

At the time of the attack, DPSCS regulations required closed-circuit cameras in each housing unit at WCI and metal detectors at every entrance/exit to the housing units. Am. Compl. (ECF 5) ¶¶ 16–17. However, there were no cameras or metal detectors in the relevant housing units on the day of the subject attack. *Id.* ¶¶ 18–19.

The Defendants knew that Plaintiff's assailant was a violent, high-risk member of the MS-13 gang who had previously attacked other prisoners at WCI. *Id.* ¶¶ 20–21. Plaintiff's assailant was classified as a maximum-security prisoner on the day of the attack and should have been subjected to even more rigorous security requirements before he was allowed around other prisoners. *Id.* ¶¶ 23–24.

On the morning of the attack, wearing a short-sleeve shirt, Plaintiff's assailant tied an eight-inch blade to his wrist with a shoelace. *Id.* ¶¶ 29–30. The assailant walked from his housing unit onto the WCI prison yard through the door guarded by Defendant McKenzie. *Id.* ¶ 31. Because the assailant had a violent history and was classified as a maximum-security prisoner, which McKenzie knew, McKenzie was required to more vigorously search the assailant to ensure the safety of the other prisoners. *Id.* ¶¶ 24, 34. However, McKenzie failed to do so, which allowed the assailant to attack the Plaintiff. *Id.* ¶¶ 32, 35. After the attack, the DPSCS Intelligence and Investigative Division ("IID") commenced an investigation that continued for several months. *Id.*, Ex. 4 at 4, 7, 10, and 13.[1]

Sadly, and as DPSCS, Graham, and the State knew at all relevant times, the subject attack was the most recent in a string of several similar prisoner-on-prisoner attacks at WCI between

---

[1] IID investigates misconduct allegations in Maryland prisons and has mandatory jurisdiction once it commences an investigation.

2015 and 2018. *Id.* ¶ 54. Many of these previous attacks occurred because of the same protocol and facility failures that contributed to the subject attack. *Id.* Moreover, DPSCS, Graham, and the State were specifically advised of these systemic deficiencies before the subject attack through corrective action plans and/or quality assurance reviews at WCI but failed to adequately respond to these known risks. *Id.*

The brutal attack severed Plaintiff's vertebral artery and the injury was so severe that Plaintiff was flown to Shock Trauma via Medivac helicopter.[2] *Id.* ¶¶ 36–37. Although the emergency responders intubated Plaintiff during the Medivac flight, Plaintiff could still hear and feel everything around him, and he believed that he was going to die as he felt blood pouring out of his neck. *Id.* ¶ 38. Plaintiff spent one week in Shock Trauma recovering from his wounds and from the two surgeries necessitated by the attack. *Id.* ¶¶ 37, 40.

Plaintiff was discharged from Shock Trauma and sent back to DPSCS on September 13, 2018, with specific orders to follow up with the neurosurgery team within two weeks, with an ophthalmologist and orthopedist as soon as possible, and with prescriptions for five medications. *Id.* ¶¶ 43–45. However, Defendants DPSCS, Graham, and the State ignored the Shock Trauma discharge orders and failed to provide Plaintiff with any follow-up medical care for several months after he returned to WCI. *Id.* ¶¶ 46–47. DPSCS finally scheduled Plaintiff's follow-up appointment with the neurosurgery team on November 13, 2018—ten weeks beyond the date on the Shock Trauma discharge order. *Id.* ¶ 48.

During the November neurosurgery appointment, the physician noted an enlarged mass in Plaintiff's neck and left arm weakness with no improvement since the surgeries. *Id.* ¶ 49. The physician referred Plaintiff to an orthopedic surgeon, ordered a nerve conduction study, prescribed

---

[2] "Shock Trauma" refers to the R. Adams Cowley Shock Trauma Center, which is part of the University of Maryland Medical Center in Baltimore City, Maryland.

a new medication for pain, and the physician gave these orders to DPSCS. *Id.* ¶ 50. However, DPSCS ignored these orders and only provided Plaintiff with a nerve conduction study on March 13, 2019—six months after the attack. *Id.* ¶¶ 50–51. Plaintiff now suffers a permanent loss of feeling on the left side of his neck, face, and head, with reduced strength and range of motion in his left upper extremities because the Defendants did not follow the Shock Trauma physicians' follow-up orders. *Id.* ¶ 53.

Plaintiff filed several Requests for Administrative Remedies ("ARP") concerning WCI's failure to provide him with necessary medical care after his discharge from Shock Trauma,[3] two of which were found to be meritorious on November 26, 2018, and January 18, 2019, respectively. True and correct copies of the meritorious findings are attached as **EXHIBIT 1**. However, monetary damages were not available to Plaintiff despite those meritorious findings.

### *Maryland Administrative Grievance Regulations*

Importantly, since 2008, Maryland regulations require wardens and the Commissioner to issue a final dismissal for any ARP that shares a "basis of an investigation being conducted by the Department's Intelligence and Investigative Division." COMAR 12.02.28.11(B)(1)(h). Similarly, Maryland law requires IGO to dismiss an ARP as "wholly lacking in merit" when IID is conducting a parallel investigation, and that dismissal is considered the final decision of DPSCS. *Id.* 12.07.01.06(B); Am. Compl., Ex. 4 (ECF 5-4) at 10; Md. Code, Corr. Servs. § 10-207(b)(1).

### *Plaintiff's Exhaustion Efforts*

On September 16, 2018, Plaintiff submitted an ARP to the WCI warden regarding WCI's failure to protect Plaintiff from a known risk of harm. *Id.*, Ex. 4 (ECF 5-4) at 7. On September

---

[3] An ARP is the first step in the mandatory administrative grievance process that Maryland prisoners must exhaust before filing a lawsuit.

18, 2018, the warden dismissed the ARP, as required by DPSCS regulations, because of the parallel IID investigation into the underlying attack. *Id.* The warden's dismissal order was devoid of any notice to Plaintiff of his rights to appeal the decision. *Id.*

On September 20, 2018, Plaintiff appealed the warden's dismissal to the Commissioner of Correction, who dismissed the appeal on September 26, 2018, as required by DPSCS regulations, because of the parallel IID investigation. *Id.*, Ex. 4 (ECF 5-4) at 4. The Commissioner's dismissal order was devoid of any notice to Plaintiff of his right to appeal the decision, but it made clear that the dismissal was "Final per C.O.M.A.R.". *Id.*

Unsure how to proceed, especially because he was not privy to the specifics or status of the IID investigation, Plaintiff filed an Amended Complaint in this Court on November 6, 2018, in the case styled *John Fishback v. Richard Graham, et al.*, No. 1:18-cv-03152-JKB (the "First Case"). *Id.*, ECF 7. By way of background, Plaintiff filed a Complaint for Injunctive Relief on October 10, 2018, after MS-13 gang members at WCI threatened to "finish the job," which Plaintiff understood to mean killing him. *Id.*, ECF 1.[4] In that Amended Complaint, Plaintiff asserted claims for failure to protect him from a known risk, violations of the Eighth Amendment, negligence, failures to provide him with necessary medical follow-up care, and injunctive relief (transfer from WCI because of continuing threats). *Id.*, ECF 7.

At the same time, on October 11, 2018, Plaintiff appealed the Commissioner's dismissal to the Inmate Grievance Office ("IGO"), which dismissed the appeal on November 21, 2018, as required by statute, because the parallel IID investigation divested IGO of jurisdiction over the

---

[4] Defendants Graham and McKenzie were named as defendants in this lawsuit along with numerous other individuals and entities. Notably, both Graham and McKenzie answered the complaint, through their counsel at the Maryland Office of the Attorney General ("OAG") and did not raise exhaustion as either an affirmative defense (under the PLRA) or as a pleading requirement (under Maryland law). *See Fishback v. Graham*, No. 1:18-cv-03152-JKB, ECF 38 (Sept. 12, 2019).

ARP.  *Id.*, Ex. 4 (ECF 5-4) at 2–3, 10.  Indeed, the IGO's dismissal notice plainly stated: "Accordingly, your grievance is hereby administratively dismissed pursuant to Md. Code Ann. Corr. Serv. §10-207(b)(1) as having been determined to be wholly lacking in merit, **and this file is closed**."  Am. Compl., Ex. 4 (ECF 5-4) at 10 (emphasis supplied).

However, on June 14, 2019, the IGO reversed course, ignoring the statutory effect of its previous dismissal, and referred Plaintiff's grievance to the Office of Administrative Hearings ("OAH").  *Id.*, Ex. 4 at 14; *see also* Md. Code, Corr. Servs. § 10-207(b)(2)(i).  At that same time, this Court entered an order staying the First Case.  *See Fishback v. Graham*, No. 1:18-cv-03152-JKB, ECF 33 (May 28, 2019).  On August 18, 2020, OAH held a hearing on Plaintiff's (dismissed) ARP and found that WCI was not responsible for the subject attack in a written opinion dated November 9, 2020.[5]  This Court dismissed the First Case without prejudice, on Plaintiff's motion after the OAH decision so that Plaintiff could truncate the named defendants and the claims asserted and refile the claim as a new complaint with the proper parties and causes of action.  *See id.*, ECF 54, 55.

On August 27, 2021, Plaintiff filed this action in the Circuit Court of Maryland for Allegany County, styled as *John Fishback v. State of Maryland, et al.*, No. C-01-CV-21-000216.  The Defendants, through OAG, moved to dismiss the Complaint on exhaustion grounds, which Plaintiff opposed, and the circuit court denied on February 24, 2022. *See* ECF 1-38.  On March 7, 2022, Plaintiff filed an Amended Complaint, which the Defendants removed to this Court on April 6, 2022.  *See* ECF 1.

#### STANDARD OF DETERMINATION

---

[5] OAG represented DPSCS and WCI at the OAH hearing.

A complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a)(2) only requires the Plaintiff to provide a short and plain statement of the claim that is sufficient to give the Defendants fair notice of what the claims are and the grounds upon which they rest. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244-45 (4th Cir. 1999). This liberal notice-pleading standard is why a Rule 12(b)(6) motion "should be granted only in limited circumstances." *Cortez v. Prince George's County*, 31 Fed. Appx. 123, 126 (2002).

Dismissal is inappropriate unless, accepting as true the well-pleaded allegations in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) (a complaint "need only *allege facts* sufficient to *state* elements of the claim") (emphasis in original).

Where, as here, the motion to dismiss involves a civil-rights complaint, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards v. City of Goldsboro*, 178 F.3d at 244 (emphasis in original).

**ARGUMENT**

**A. The Amended Complaint Sufficiently Alleges Violations Under 42 U.S.C. § 1983 in Count III**

The Eighth Amendment's prohibition on cruel and unusual punishment "imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties include providing adequate medical care, adequately responding to known risks of harm, and taking reasonable measures to guarantee a prisoner's safety. *Id.* Thus, the Rule 8 pleading requirements are met for a Section 1983 claim when a plaintiff alleges that "some person has deprived him of a federal right and that the person who has deprived him of that right acted under color of state law." *Curbelo v. Pendergraph*, 124 F. App'x 162, 162 (4th Cir. 2005) (internal quotation and citation omitted).

In failure to protect cases, prison officials breach their "duty to protect prisoners from violence at the hands of other prisoners" when they know of and deliberately ignore "a sufficiently serious threat of physical harm posed by other prisoners." *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997) (quoting *Farmer*, 511 U.S. at 831–34). Liability can attach when "correctional officers fail[] to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). Liability can also attach where prison officials fail "to take *any* action to avert an attack by one prisoner on another when they knew that a substantial risk of harm existed." *Winfield*, 106 F.3d at 532.

Prison supervisors can also be held liable under Section 1983 if the plaintiff shows:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

A valid Eighth Amendment claim must satisfy two elements: First, "the deprivation must be sufficiently serious." *Brown v. North Carolina Dept. of Corrections*, 360 Fed. App'x 494, 496 (4th Cir. 2010). A plaintiff satisfies this objective element by alleging a "serious or significant physical or emotional injury resulting from the challenged conditions." *Id.* Here, the Amended Complaint alleges severe trauma and permanent injuries caused by the attack and by the failures and delays in providing follow-up medical care, thus satisfying the first element. *See* Am. Compl., ECF 5 ¶¶ 3, 35–40, 42–53.

Second, the plaintiff must show that the prison official was "deliberate[ly] indifferen[t] to inmate health or safety" by "suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 837). A plaintiff can prove actual knowledge "in the usual ways, including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that it was so obvious." *Raynor*, 817 F.3d at 128 (citing *Farmer*, 511 U.S. at 837). However, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Danser*, 772 F.3d at 347 (quoting *Farmer*, 511 U.S. at 837).

The Supreme Court has explained that a plaintiff satisfies the subjective element by showing that the prison official acted with criminal recklessness: "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. Ultimately, the subjective prong of a deliberate indifference claim **"is a question of fact"** for the jury to resolve. *Id.* at 842 (emphasis supplied).

Here, it is undisputed that Plaintiff's assailant, who was classified as maximum-security, secured an eight-inch knife to his wrist, and wore a short-sleeve shirt on the morning of the attack. *See* Am. Compl., ECF 5 ¶¶ 29–30; *see also id.*, Ex. 2 (ECF 5-2). The assailant walked through the security checkpoint guarded by McKenzie and onto the WCI prison yard. *Id.* ¶ 31. Accepting these allegations as true, a jury can reasonably find that McKenzie was subjectively "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed], and . . . also dr[ew] the inference." *Farmer*, 511 U.S. at 837; *see also Raynor*, 817 F.3d at 128 ("a corrections officer's failure to intervene in a beating can be the basis of § 1983 liability if the officer had a reasonable opportunity to act and simply refused to do so." (citation omitted). Simply put, because the risk of harm that the assailant posed to prisoners like the Plaintiff was obvious, a jury can reasonably conclude that McKenzie "had been exposed to information concerning the risk" and therefore "must have known about it." *Farmer*, 511 U.S. at 842. McKenzie is, of course, free to rebut the deliberate indifference allegation even in the face of an obvious risk, but any such rebuttal will necessarily implicate material factual disputes and be reserved for the jury to resolve.

Similarly, Graham knew that: (a) WCI had no working CCTV cameras (¶ 18); (b) there was no metal detector securing the assailant's housing unit door (¶ 19); (c) the assailant had previously attacked other prisoners at WCI and was known to be a violent, high-risk prisoner (¶ 21); (d) Shock Trauma provided specific discharge orders that were not followed (¶ 45–47); (e) this attack was the most recent in a long string of prisoner-on-prisoner attacks at WCI between 2015 and 2018, and the previous attacks occurred because of similar systemic failures (¶ 54); and (f) before the attack, WCI protocols for ensuring prisoner safety were deficient and improvements were recommended through corrective action plans and quality assurance reviews but not

performed (¶ 54–56).  Thus, Plaintiff has sufficiently asserted both direct and supervisory Eighth Amendment claims against Graham.[6]

Accordingly, the Court should deny the Motion because Plaintiff has adequately stated a Section 1983 claim against DPSCS, Graham, and McKenzie.[7]

### B. Defendants Are Not Entitled to Qualified Immunity Because the Rights to Adequate Medical Care and to be Free from Known Risks of Harm Were Clearly Established

Qualified immunity "shields government officials from liability in a § 1983 suit as long as their conduct has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017).  If the right violated was clearly established at the time, then qualified immunity cannot apply.  *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013).  Although a party may present a qualified immunity defense in a motion to dismiss, the Fourth Circuit has cautioned that "when asserted at this early stage in the proceedings, the defense faces a formidable hurdle and is usually not successful."  *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396 (4th Cir. 2014).

The Supreme Court long ago held "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted).  The Fourth Circuit Court recently reiterated that prisoners "have an Eighth Amendment right to be protected from malicious attacks, not just by other inmates, but also from the very officials tasked with ensuring their security."  *Thompson v. Virginia*, 878 F.3d 89, 109 (4th Cir. 2017).  Thus, a prisoner's rights to adequate medical care and

---

[6] Graham also knew that gang members at WCI threatened to kill Plaintiff vis-à-vis Plaintiff's November 2017 action in this Court.  *See John Fishback v. Richard Graham, Jr., et al.*, No. 1:17-cv-03234-JKB.

[7] The Defendants make no arguments concerning DPSCS and Count III, and thus concede that the Amended Complaint adequately alleges an Eighth Amendment claim against DPSCS.

to protection from malicious attacks were well established at the time of the attack.  Moreover, DPSCS has.  *See* Ex. 1.  Qualified immunity cannot apply as a matter of law because Plaintiff's rights were so clearly established at all relevant times and because DPSCS has **admitted** that WCI failed to provide Plaintiff with adequate medical care after his discharge from Shock Trauma.  *See Tobey*, 706 F.3d at 385.

Accordingly, the Court should deny the Motion.

### C. Because the Amended Complaint Sufficiently States an Eighth Amendment Claim, the Maryland Declaration of Rights Claim in Count IV Also Survives

Although federal constitutional claims and those brought under the Maryland Declaration of Rights are construed *in pari materia*, "each provision is independent . . . ."  *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 621 (2002); *see also Frankel v. Board of Regents*, 361 Md. 298, 313 (2000) (noting that Article 24 and the Fourteenth Amendment are complimentary but independent and that governmental action may be unconstitutional under the authority of Article 24 alone).  Thus, when analyzing the Maryland Declaration of Rights, federal decisions applying the Due Process Clause "are no more than persuasive authorities."  *Dua*, 370 Md. at 623.

Even if the Court analyzes Count Four under an Eighth Amendment framework, the Complaint sufficiently states a violation, as described in Section A, *supra*.  Accordingly, this Court should deny the Motion as to Count Four.

### D. Plaintiff Exhausted His Available Administrative Remedies

Typically, the Maryland Prisoner Litigation Act ("PLA") requires prisoners to exhaust certain administrative remedies before filing a civil claim relating to their conditions of confinement.  Md. Code, Cts. & Jud. Proc. ("CJP") §§ 5-1001, *et seq.*  The exhaustion framework requires a prisoner to file an ARP with the warden, then appeal that denial to the Commissioner, then appeal the Commissioner's denial to IGO, and finally seek judicial review of the IGO's

decision.  *See* Md. Code, Corr. Servs. §§ 10-201, *et seq.*  The PLA also requires a plaintiff to attach proof of his exhaustion to the initial complaint, although a failure to do so results in a dismissal without prejudice to grant the prisoner leave to amend.  CJP § 5-1003(b).

One exception to this mandatory exhaustion framework is where a prisoner's grievance "is found to be meritorious and monetary damages were not available through the administrative remedy available to the prisoner."  CJP § 5-1003(a)(3).  Another exception exists where the administrative remedy process is rendered unavailable to the prisoner, which happens, *inter alia*, when IID commences an investigation into the facts that underlie the ARP.  *See, e.g., Hanna v. Hill*, Civil No. PX-21-684, 2022 WL 111166, at *5 (D. Md. Jan. 12, 2022).  This Court has made clear: "Because the existence of an IIU investigation shuts down the ARP process and thus exhausts administrative remedies for complaints that would typically fall within the ARP jurisdiction, Plaintiff met his burden to exhaust upon the initiation of that investigation." *Brightwell v. Hershberger*, 2016 WL 4537766, at *9 (D. Md. Aug. 31, 2016).

Here, Plaintiff attached proof of his exhaustion to the Amended Complaint.  *See* ECF 5. Plaintiff filed ARPs for the failure to protect and inadequate medical care, which the warden, the Commissioner, and IGO dismissed because of the parallel IID investigation.  *See* Am. Compl., Ex. 4 (ECF 5-4); *see also* Ex. 1.  Although DPSCS found Plaintiff's inadequate medical care ARPs to be meritorious, no monetary relief was available.  *See* Ex. 1.  Because no monetary relief was available, Plaintiff was not required to seek judicial review.  *See* Md. Code, CJP § 5-1003(a)(3). Thus, Plaintiff exhausted his inadequate medical care claims in Counts I, II, and IV.

Plaintiff properly exhausted his available administrative remedies with respect to his failure to protect ARP because he filed a timely ARP and appealed its dismissal through a hearing with OAH.  Plaintiff maintains that judicial review of OAH's decision was not available to him because,

under these circumstances, that procedure was "unknowable by an ordinary prisoner" or "the system so confusing that no such inmate could make use of it," and because "Maryland officials thwarted the effective invocation of the administrative process through . . . misrepresentations, either on a system-wide basis or in the individual case." *Ross v. Blake*, 578 U.S. 632, 648 (2016).

Specifically, Maryland law requires the IGO to issue a final dismissal, as "wholly lacking in merit on its face," for an ARP that IID is simultaneously investigating.   COMAR 12.07.01.06(B); Am. Compl., Ex. 4 (ECF 5-4) at 10; Md. Code, Corr. Servs. § 10-207(b)(1). Maryland law requires a prisoner to seek judicial review of such a dismissal within thirty days to properly exhaust the claim.  Md. Code, Corr. Servs. § 10-210(b)(1); Maryland Rule 7-203.

However, here, when IGO dismissed Plaintiff's ARP because of the parallel IID investigation and told him that "this file is closed," it (erroneously) advised Plaintiff that the grievance "may be administratively reopened" if Plaintiff disagreed with the findings of the IID investigation.  (ECF 5-4 at 10).  IGO had no authority to advise Plaintiff to contravene the judicial review statute, or to reopen the ARP once it was finally dismissed and, in so doing, IGO created a scheme that was "unknowable by an ordinary prisoner" and it "thwarted the effective invocation of the administrative process" by misrepresenting Plaintiff's rights in this case.  *Ross*, 578 U.S. at 648.

If Plaintiff sought judicial review of IGO's dismissal, he would have foreclosed his ability to reopen the ARP after the IID process ended.[8]  But, if Plaintiff sought judicial review after the OAH decision in November 2020, then a reviewing court would be foreclosed from considering that petition.  *See* Md. Code, CJP § 5-1003(a); Maryland Rule 7-203; *see also Colao v. County*

---

[8] Interestingly, if Plaintiff sought judicial review of the IID-related dismissal, the reviewing court would have been compelled to affirm because the dismissal was mandated by statute.  In that instance, Plaintiff would have exhausted his administrative remedies and could have filed suit.  However, Plaintiff relied on IGO's representation, to his detriment, out of fear that he would waive his ARP if he did not attempt to reopen it once the IID process ended.

*Council*, 109 Md. App. 431 (1996), *aff'd* 346 Md. 342 (1997) (Maryland circuit courts have no discretion to consider petition for judicial review filed more than thirty days after the final agency decision).  Thus, DPSCS engaged in a bait-and-switch, advising Plaintiff that he could wait until the IID investigation ended and attempt to reopen the ARP while failing to warn Plaintiff that by doing so he would waive his rights to judicial review.

It is challenging enough for a prisoner to navigate the procedural exhaustion rules that require the prisoner to appeal mandatory dismissals.  Indeed, as Judge Chasanow recently commented, such a process "runs counter to" well-settled precedent "and common sense." *Brightwell v. Hershberger*, 2016 WL 4537766, at *9 (D. Md. Aug. 31, 2016).  But, to expect a prisoner to discern the exhaustion requirements when the agency overseeing that process is advising that prisoner to refile his grievance once the IID process ends—waiving judicial review in the process—is impossible.

> Where the relevant administrative rules provide clear grounds for a procedural dismissal of the complaint, it seems disingenuous to suggest that a prisoner ought to appeal such a dismissal even if he knows it was rightly decided and has no legal or factual arguments that the complaint was inappropriately dismissed. At best, this process would be 'so confusing that . . . no reasonable prisoner can use [it].' At worst, this is the type of 'game-playing' that 'thwarts the effective invocation of the administrative process.' In either case, Plaintiff has established that such an administrative remedy was not 'available' to him.

*Id.* (quoting *Ross*, 136 S. Ct. at 1859, 1862) (emphasis supplied).

CONCLUSION

For all the foregoing reasons, this Court should deny the Motion.

Respectfully submitted,

_____

**Allen E. Honick, Bar #19822**
FURMAN | HONICK LAW
11155 Red Run Boulevard, Suite 110
Owings Mills, Maryland 21117
(410) 844-6000 – Office
(410) 705-5651 – Facsimile
allen@fhjustice.com
***Counsel for Plaintiff***

CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of June, 2022, a copy of the ***Plaintiff's Opposition to the Defendant's Motion to Dismiss and Request for Hearing*** was forwarded via the Court's ECF system to:

Michael O. Doyle, Federal Bar No.: 11291
Assistant Attorney General
Office of the Attorney General
Department of Public Safety and
 Correctional Services
6776 Reisterstown Road, Suite 311
Baltimore, Maryland 21215
(410) 585-3460 – Office
(410) 484-5939 – Facsimile
michaelo.doyle@maryland.gov
***Attorneys for Defendants***

_____

**Allen E. Honick, Bar #19822**