IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JOHN FISHBACK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF MARYLAND, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 22-cv-00833-LKG <br><br> Dated: February 14, 2023 |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

In this civil action, Plaintiff, John W. Fishback, alleges that Defendants, the Maryland Department of Public Safety and Correctional Services ("DPSCS"); the State of Maryland ("the State"); Warden Richard Graham, Jr. ("Warden Graham"); and Correctional Officer Curran McKenzie ("Officer McKenzie"), violated his rights under the Eighth Amendment to the Constitution of the United States; 42 U.S.C. § 1983; and Maryland law, in connection with an attack on Plaintiff that occurred while he was incarcerated at the Western Correctional Institution ("WCI"). *See* ECF No. 5. Defendants have moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). ECF Nos. 18 and 25. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion to dismiss; (2) **DISMISSES** Counts I, II and IV of the amended complaint; and (3) **DISMISSES** Count III of the amended complaint as to Warden Graham and Officer McKenzie. Fed. R. Civ. P. 12 (b)(1) and (6).

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, John Fishback, is an inmate currently incarcerated at the Eastern Correctional Institution ("ECI") located in Westover, Maryland.  ECF No. 5 at ¶ 1.  Defendants are: (1) the DPSCS, a Maryland agency charged with protecting the public, its employees, and detainees and offenders under its supervision; (2) the State of Maryland; (3) Warden Graham, the warden at the Western Correctional Institution ("WCI") during the time relevant to this dispute; and (4) Officer McKenzie, a correctional officer at WCI at the time relevant to this dispute.  *Id*. at 2-3.  Plaintiff asserts four claims in the amended complaint: (1) negligence against all Defendants (Count I); (2) negligent hiring, training, and supervision against the DPSCS, the State and Warden Graham (Count II); (3) violation of 42 U.S.C. § 1983 against the DPSCS, Warden Graham and Officer McKenzie (Count III); and (4) violation of the Maryland Declaration of Rights against all Defendants.  *Id*. at 10-14.

### The September 6, 2018 Attack

Plaintiff's claims arise from an unfortunate incident that occurred while he was incarcerated at WCI.  Specifically, Plaintiff alleges that on September 6, 2018, he was attacked by another prisoner who stabbed him with a knife.  *Id.* at 4.  Plaintiff also alleges that the inmate who attacked him was classified as a maximum-security prisoner on the day of the attack and that this inmate had a history of fighting with other prisoners.  *Id*. at 5.  In addition, Plaintiff alleges that there was no metal detector or working security cameras in the dormitory, or in the open compound where the attack occurred on September 6, 2018.  *Id*.  Lastly, Plaintiff contends that the inmate who attacked him walked past the security checkpoint guarded by Officer McKenzie, while holding an eight-inch knife to his wrist and wearing a short-sleeve shirt.  ECF No. 19 at 10.

Following the attack, Plaintiff was flown to a hospital, where he was admitted and later discharged on September 13, 2018.  *Id*. at 8.  Plaintiff alleges that, while he was hospitalized, the DPSCS and/or WCI personnel:  (1) lost or destroyed his personal property, including his

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint, Defendant's motion to dismiss, and the memorandum in support thereof.  ECF Nos. 5 and 18.

cell phone; (2) failed to inventory his personal property; and (3) failed to return his property upon being discharged from the hospital. *Id*. Plaintiff also alleges that, after he was discharged from the hospital, DPSCS, the State, and Warden Graham: (1) failed to follow up with his neurosurgery medical team within two weeks of his discharge; (2) failed to obtain and dispense his prescription medications; and (3) failed to schedule his follow up visits with an ophthalmologist and orthopedist. *Id*. at 9.

### Plaintiff's Administrative Remedy Procedure

On September 17, 2018, Plaintiff submitted an administrative remedy procedure ("ARP") to Warden Graham alleging that the WCI failed to protect him from a known risk of harm. ECF No. 5 at 4. Warden Graham subsequently dismissed Plaintiff's ARP on September 18, 2018. *Id*. Thereafter, Plaintiff appealed the dismissal of his ARP to the Commissioner of Corrections on September 20, 2018. *Id*. The Commissioner of Corrections subsequently dismissed Plaintiff's appeal on September 26, 2018. *Id*.

On October 11, 2018, Plaintiff appealed the Commissioner of Corrections's dismissal to the Inmate Grievance Office ("IGO"). *Id*. In responding to Plaintiff's grievance, the IGO noted that Plaintiff's "allegations are subject to the Internal Investigative Division ("IID") as the primary investigative body." ECF No. 5-4 at 10. Given this, the IGO determined that it would "not give further administrative consideration to [Plaintiff's] grievance complaint while essentially the same complaint is pending before the IID." *Id.* And so, the IGO dismissed the grievance without a hearing. ECF No. 19 at 5-6.

The IGO informed Plaintiff, however, that "your grievance is considered as having been timely filed and this dismissal is without prejudice and may be administratively reopened in the event that you disagree with the findings of the IID investigation." *Id.* Given this, Plaintiff requested that IGO administratively reopen his grievance once the IID investigation concluded, and the IGO referred Plaintiff's grievance to the Office of Administrative Hearings ("OAH") on June 14, 2019. ECF No. 19 at 6. On August 18, 2020, the OAH held a hearing on Plaintiff's appeal. *Id*. The OAH issued a final decision finding that the WCI was not responsible for the attack of Plaintiff on November 9, 2020.[2] *Id*.

---

[2] Under Maryland law, a prisoner is first required to file an ARP with his facility's "managing official" within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR

3

### B. Procedural Background

Plaintiff commenced this civil action in the Circuit Court of Alleghany County on August 27, 2021. ECF No. 1. Defendants removed the case to this Court on April 6, 2022. *Id*. On May 31, 2022, Defendant filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and a memorandum in support thereof. ECF No. 18. On June 24, 2022, Plaintiff filed a response in opposition to Defendants' motion. ECF No. 19. On July 22, 2022, the Defendants filed a reply in support of their motion. ECF No. 25.

Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear [a] case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1995) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac*

---

12.02.28.09(B). If the managing official denies a prisoner's ARP, the prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). If a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210.

4

*R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  Given this, the Court "regard[s] the pleadings as mere evidence on the issues and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1).  *Id.*  (citation omitted).  And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court should grant a motion to dismiss for lack of subject-matter jurisdiction.  *Davis*, 367 F. Supp. 2d at 799.

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."  *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### C. The Maryland Prisoner Litigation Act

The Maryland Prisoner Litigation Act ("PLA") requires that a prisoner fully exhaust all administrative remedies for resolving a complaint or grievance before commencing a civil action.  *Cts. & Jud. Proc*. § 5-1003(a)(1).  The PLA places the burden on the prisoner to show exhaustion of administrative remedies.  *Id*.  And so, an absence of proof that the prisoner has documented an exhaustion of all administrative remedies warrants dismissal of the prisoner's case.  *Harris v. McKenzie*, 241 Md. App. 672, 681 (2019).  In this regard, Maryland law requires that a prisoner plead evidence of the exhaustion of administrative remedies in the complaint, or

by attachment to the complaint. *Evans v. State*, 396 Md. 256, 330 (2006); *see also Cts. & Jud. Proc*. at § 5-1003(b). And so, a prisoner must have filed a complaint or grievance with the appropriate agency, the agency must have rendered a decision on the complaint, and the prisoner must have undertaken the proper appeals process, prior to commencing an action in this Court. Cts. & Jud. Proc. § 5-1003(b).

### D. The Eighth Amendment And Section 1983 Claims

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages).

The Supreme Court has held that two elements must be met for a prisoner to state a plausible failure to protect claim under the Eighth Amendment based upon Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 836-838 (1994). First, the prison official must have knowledge of a substantial risk of serious harm. *Id*. at 837. Second, the prison official must have acted with reckless indifference, a criminal recklessness standard, to the prisoner's safety. *Id*. Given this, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, unless the official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 836-838.

This Court has also held that an official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gardner v. United States*, 184 F.Supp.3d 175, 181 (D. Md. 2016). And so, what a reasonable person might infer from a substantial and unique risk alone is not sufficient to establish a failure to protect claim; the official, themself, must have legitimately drawn the inference. *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997). But a prison official cannot escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. *Farmer*, 511 U.S. at 843.

An Eighth Amendment claim for failure to provide medical care includes objective and subjective elements. *Scinto v. Stansberry*, 841 F.3d 219, 225-26 (4th Cir. 2016); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). The objective element requires a "serious" medical condition be present before a claim can be sustained. *Id*. A medical condition is objectively serious when it either is "diagnosed by a physician as mandating treatment," or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto*, 841 F.3d at 225 (*quoting Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). The subjective element requires that the prison official must have acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In this regard, the subjective state of mind required is that of "deliberate indifference . . . 'to inmate health or safety.'" *Scinto*, 841 F.3d at 225 (*quoting Farmer*, 511 U.S. at 834).

Lastly, The United States Court of Appeals for the Fourth Circuit has held that prison supervisors can be held liable under Section 1983, if the prisoner shows that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the prisoner; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the prisoner. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

## IV.   ANALYSIS

Defendants have moved to dismiss Counts I, II and IV of the amended complaint for lack of subject-matter jurisdiction, upon the ground that Plaintiff failed to exhaust his administrative remedies under the Maryland Prisoner Litigation Act before commencing this action. ECF No. 25 at 8-9. Defendants also seek dismissal of Count III of the amended complaint upon the ground that Plaintiff fails to state a plausible claim under Section 1983 against Warden Graham and Officer McKenzie.

Plaintiff opposes dismissal of this matter upon the grounds that he was not obligated, or able, to seek judicial review of the OAH's final decision before commencing this action. ECF No. 19 at 12-15. In addition, Plaintiff argues that he alleges a viable Section 1983 claim in Count III of the amended complaint, because an inference can be drawn from the factual

7

allegations in the amended complaint that Warden Graham and Officer McKenzie were aware of the substantial risk of serious injury to Plaintiff.  ECF No. 19 at 10-11.

For the reasons set forth below, there can be no genuine dispute that Plaintiff has not exhausted administrative remedies under the PLA before bringing this litigation.  A careful reading of the amended complaint also makes clear that the amended complaint is devoid of any factual allegations to show that Warden Graham and Officer McKenzie had knowledge that Plaintiff was at substantial risk of serious harm or injury.  And so, the Court: (1) **GRANTS** Defendants' motion to dismiss; (2) **DISMISSES** Counts I, II and IV of the amended complaint; and (3) **DISMISSES** Count III of the amended complaint as to Warden Graham and Officer McKenzie.  Fed. R. Civ. P. 12 (b)(1) and (6).

### A.  Plaintiff Failed To Exhaust His Administrative Remedies

Plaintiff neither provides proof that he exhausted his administrative remedies, nor shows that he has exhausted such remedies with regard to his state law claims alleging failure to protect and failure to provide medical care.  The Maryland Prisoner Litigation Act requires that a prisoner fully exhaust administrative remedies for resolving a complaint or grievance before commencing a civil action.  *Cts. & Jud. Proc*. § 5-1003(a)(1).  Given this, an absence of proof that the prisoner has documented an exhaustion of all administrative remedies warrants dismissal of the prisoner's case.  *Harris v. McKenzie*, 241 Md. App. 672, 681 (2019).  And so, Plaintiff must have filed a complaint or grievance with the appropriate agency, the agency must have rendered a decision on the complaint, and the Plaintiff must have undertaken the proper appeals process, including seeking judicial review, prior to commencing an action in this Court.  Cts. & Jud. Proc. § 5-1003(b).

 In this case, Plaintiff concedes that he did not seek judicial review of the OAH's November 9, 2020, final decision on his failure to protect claim.  ECF No. 18 at 15.  Because Plaintiff failed to seek such judicial review, he has not exhausted administrative remedies for this claim as required by the PLA.  Cts. & Jud. Proc. § 5-1003(b).

Plaintiff's argument that he is not obligated to exhaust his administrative remedies for his failure to protect claim, because the IGO erred by reopening his APR and referring the APR to the OAH upon completion of the IID investigation, is also unpersuasive.  As Defendants correctly observe, Plaintiff identifies no prohibition in the IGO's governing statute or regulations

8

to the IGO reopening his APR and allowing it to proceed to a hearing following the completion of the IID investigation. ECF No. 25 at 11. In fact, the undisputed facts of this case make clear that Plaintiff requested that IGO reopen his APR, and that he availed himself of the administrative process before the IGO and OAH thereafter. *Id*. Given this, Plaintiff's argument that administrative remedies were not available to him with regard to his failure to protect claim is belied by the facts of this case.[3]

Plaintiff's reliance upon *Ross v. Blake* to argue that administrative remedies were not available to him for this claim is also misplaced. In *Ross*, the Supreme Court, interpreting the federal Prison Litigation Reform Act, identified limited circumstances in which a prisoner may be excused from the exhaustion requirement under that statute because administrative remedies are "unavailable." *Ross v. Blake*, 578 U.S. 632, 643 (2016). But Plaintiff identifies no similar circumstances in this case that would have prevented him from seeking judicial review of the OAH's final decision. ECF No. 19 at 13-14.

Rather, Plaintiff states that he was unsure how to proceed after the Commissioner of Corrections dismissed his administrative appeal, pending the IID Investigation. ECF No. 19 at 14-15. But the factual record shows that Plaintiff *did* avail himself of the administrative process once his APR was reopened, and that he ultimately elected not to seek judicial review of the OAH's final decision. ECF No. 19 at 13-15. It is also notable that, when the IGO initially dismissed Plaintiff's administrative appeal, it specifically informed Plaintiff that "your grievance is considered as having been timely filed and this dismissal is without prejudice and your grievance may be administratively reopened in the event that you disagree with the findings of

---

[3] The Supreme Court has identified three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

the IID investigation." *Id.* And so, the factual record shows that administrative remedies were available to Plaintiff with regard to his failure to protect claim.

The factual record for this case also makes clear that Plaintiff has not exhausted his administrative remedies with regards to his state law claims based upon failure to provide medical care. Plaintiff does not dispute that he failed to exhaust administrative remedies with regards to his claims that Defendants failed to provide follow-up medical care, and lost or destroyed his property, following his September 2018 hospitalization. *See* ECF No. 5 ¶¶ 41, 42-55. It is also undisputed that Plaintiff did not file grievances with the IGO on either of these claims. ECF No. 19 at 4; *see* ECF No. 19-1 at 1-2. Plaintiff's argument that he was not required to exhaust administrative remedies regarding his failure to provide medical care claim under Section § 5-1003(a)(3) of the PLA is also misguided. Plaintiff argues that this provision creates an exception to the requirement to exhaust administrative remedies, because this claim was meritorious and "no monetary relief was available." ECF No. 19 at 13.

Section § 5-1003(a)(3) provides that:

> Judicial review following administrative consideration shall be the exclusive judicial remedy for any grievance or complaint within the scope of the administrative process, unless the prisoner's complaint or grievance was found to be meritorious and monetary damages were not available through the administrative remedy available to the prisoner.

Cts. & Jud Proc. § 5-1003(a)(3). The Court does not read this provision to create an exception to the exhaustion requirement under the PLA, as Plaintiff suggests. Given this, Plaintiff also has not shown that he exhausted administrative remedies with regard to his state law claims based upon either failure to protect or failure to provide medical care. And so, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's state law claims and **DISMISSES** Counts I, II and IV of the amended complaint for lack of subject-matter jurisdiction. Fed. R Civ. P. 12(b)(1).

### B. Plaintiff Fails To Allege A Plausible Claim Under Section 1983

To the extent that Plaintiff alleges a Section 1983 claim against Warden Graham based upon a supervisory liability theory, he fails to state a plausible claim in Count III of the amended complaint. To plead a plausible supervisory liability claim under Section 1983, Plaintiff must allege facts showing that: (1) a supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff; (2) the supervisor's response to the knowledge was

10

so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged practices engaged in by the subordinate; and (3) there was an affirmative causal link between the supervisor's inaction and the constitutional injury suffered by Plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). And so, "a supervisor's mere knowledge" that subordinates have engaged in unconstitutional actions will not give rise to liability; rather, a supervisor "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Plaintiff has not met this standard here. A careful reading of the amended complaint shows that Plaintiff does not allege any facts to show that Warden Graham had actual or constructive knowledge that correctional officers at WCI were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff. ECF No. 18 at 8. Indeed, Plaintiff alleges no facts to show that Warden Graham: (1) had knowledge that an attack would occur; (2) knew the assailant possessed a knife; (3) was located anywhere near Officer McKenzie, or the location where Plaintiff was attacked; or (4) was otherwise privy to Officer McKenzie's alleged conduct. *Id*. Given this, Plaintiff fails to allege facts to show knowledge by Warden Graham that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff under Section 1983.

Plaintiff also fails to state a plausible claim under Section 1983 based upon direct liability. The Supreme Court has held that to succeed on a Section 1983 claim, a prisoner must prove that a defendant: (1) had knowledge of a substantial risk of serious harm; and (2) acted with deliberate indifference, a criminal recklessness standard, to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 836-838 (1994). The Supreme Court has also expressly rejected the application of a solely objective test that would hold a defendant liable if he or she should have known of a risk of harm. *Id*. at 837. In addition, the Fourth Circuit has held that "deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006). This Court has also held that "[p]laintiff's general assertions of deficient institutional search procedures and staffing levels . . . provide no grounds to find that the State Defendants acted with deliberate indifference." *Chavis v. Wolfe*, No. CIV.A. ELH-11-3104, 2012 WL 3610672, at *8 (D. Md. Aug. 22, 2012).

11

Here, Plaintiff alleges that, on the day he was attacked, the inmate assailant wore a short-sleeved shirt with an 8-inch knife tied around his wrist. ECF No. 5 at 4-7. Additionally, Plaintiff alleges that Officer McKenzie and other correctional officers failed to follow the governing regulations, failed to pat down or otherwise search Plaintiff's assailant, and failed to ensure the safety and security of the prisoners and staff at WCI. *Id*.

Plaintiff further alleges that Warden Graham knew that WCI had no working cameras; that there were no metal detectors; and that the assailant had previously attacked other prisoners. ECF No. 5 at 18-19; 45-47; and 54-56.

Taken as true, these allegations do not show that Warden Graham had knowledge of a substantial risk of serious harm to Plaintiff or to other prisoners. Plaintiff does not allege any facts to show that Warden Graham knew, either: that the assailant possessed a knife; the knife would be used to commit an attack on Plaintiff or other prisoners; or that Warden Graham was near the location where Plaintiff was attacked. ECF No. 5 at 4-7.

In addition, as this Court has previously held, "[P]laintiff's general assertions of deficient institutional search procedures and staffing levels . . . provide no grounds to find that the Defendants acted with deliberate indifference." *Chavis v. Wolfe*, 2012 WL 3610672, at *8. And so, Plaintiff's allegations that Warden Graham knew that WCI lacked working cameras and metal detectors are not sufficient to state a plausible Section 1983 claim.

Plaintiff's direct liability claim based upon failure to provide medical care, is also not plausible under Section 1983. This Court has held that "the medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness; and that "mere negligence or malpractice does not rise to a constitutional level. *Id*. Given this, Plaintiff's Section 1983 claim is not plausible because Plaintiff fails to allege facts to show gross incompetence with regards to his follow up medical care.

Plaintiff's direct liability allegations against Officer McKenzie for failure to protect are also problematic. Plaintiff does not allege any facts to plausibly show that Officer McKenzie had knowledge of serious risk of harm to Plaintiff or to other prisoners. ECF No. 5. As discussed above, in the amended complaint, Plaintiff alleges that, on the day he was attacked, the inmate wore a short-sleeved shirt with an 8-inch knife tied around his wrist, walked by Officer

McKenzie, and that Officer McKenzie did not search the assailant. ECF No. 5 at 4-7. Plaintiff also alleges that Officer McKenzie, and other correctional officers at WCI, failed to follow governing regulations; failed to pat down or otherwise search the inmate-assailant; and failed to ensure the safety and security of the prisoners and staff at WCI. *Id*. But absent from the amended complaint are any allegations that Officer McKenzie: (1) knew that the inmate had a knife; (2) was in the same area as the inmate; or (3) knew that there was a substantial risk of an attack or serious harm to Plaintiff or to other inmates. *Id*. Officer McKenzie's alleged failure to search the inmate alone is also not enough to show that he had knowledge of a substantial risk of serious harm or responded to that harm with deliberate indifference. *Chavis v. Wolfe*, 2012 WL 3610672, at *8. And so, Plaintiff also fails to state a plausible Section 1983 claim against Officer McKenzie.

Because the amended complaint is devoid of factual allegations that, taken as true, could plausibly show that either Warden Graham or Officer McKenzie had knowledge of a substantial risk of serious harm to Plaintiff or to other prisoners, Plaintiff fails to state a viable Section 1983 claim. And so, the Court must also **DISMISS** Count III of the amended complaint. Fed. R. Civ. P. 12(b)(6).

Because the Court concludes that Plaintiff fails to allege a plausible Section 1983 claim against Warden Graham and Officer McKenzie, the Court does not reach the issue of qualified immunity.

V.   **CONCLUSION**

In sum, Plaintiff has not exhausted his administrative remedies with regards to his state law claims in Counts I, II, and IV. Plaintiff also fails to state a plausible Section 1983 claim in Count III of the amended complaint as to Warden Graham and Officer McKenzie. And so, for these reasons, the Court:

1. **GRANTS** the Defendants' motion to dismiss;
2. **DISMISSES** Counts I, II and IV of the amended complaint; and
3. **DISMISSES** Count III of the amended complaint as to Warden Graham and Officer McKenzie.

The amended complaint also names the DPSCS as a Defendant in Count III. Neither party has addressed the claim against DPSCS in connection with the briefings of Defendants'

motion to dismiss.  And so, it is further **ORDERED** that the parties shall **FILE** a joint status report **on or before March 16, 2023**, stating their respective view on how this matter should proceed in light of this memorandum opinion and order.

Judgment is entered accordingly.

Each part to bear its own costs.

**IT IS SO ORDERED**.

                                        s/ Lydia Kay Griggsby
                                        LYDIA KAY GRIGGSBY
                                        United States District Judge